**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

EXPRESS SCRIPTS, INC., *et al.*,                )
                                                )
            Plaintiffs,                         )
                                                )
    vs.                                         )        Case No. 4:24-cv-01549-MTS
                                                )
FEDERAL TRADE COMMISSION, *et al.*,  )
                                                )
            Defendants.                         )

<u>**MEMORANDUM AND ORDER**</u>

Last year, the Federal Trade Commission commenced an administrative proceeding against Plaintiffs, three competing pharmacy-benefit managers, under Section 5 of the Federal Trade Commission Act.  Plaintiffs filed the instant action in this Court, arguing that the Federal Trade Commission's in-house proceeding violates multiple constitutional safeguards, seeking injunctive and declaratory relief.  The question now before the Court is whether it preliminarily should enjoin the Federal Trade Commission's administrative proceeding while this action progresses.  Upon consideration of the proper factors, the Court declines to do so.

**I.      Background**

Plaintiffs are pharmacy-benefit managers ("PBMs"), which are "third-party administrator[s] of prescription drug programs."  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 511 (8th Cir. 2018) (describing PBMs).  As Plaintiffs put it, PBMs "negotiate with drug-manufacturers about the costs health plan sponsors will pay for drugs, and the amount those plans and employers will pay to fill

prescriptions." Doc. [1] ¶ 2. In doing so, the PBMs maintain that they "secure discounts and other savings for health plan sponsors—which in turn allows those health plan sponsors to reduce plan premiums and out-of-pocket costs for patients." *Id.*

On September 20, 2024, the Federal Trade Commission ("FTC" or "the Commission") initiated a complaint before its in-house administrative forum against Plaintiffs pursuant to Section 5(b) of the FTC Act, 15 U.S.C. § 45(b). The lengthy complaint asserts three counts:

> (1) that [Plaintiffs here] competed unfairly in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by systematically preferring high list price insulin products, with high rebates and fees, over similar low list price products, with low rebates and fees; (2) that [some of their] systematic exclusion of lower cost insulin products from their most utilized commercial and custom formularies constitutes an unfair act or practice in violation of Section 5(a), (n) of the FTC Act, 15 U.S.C. § 45(a), (n); and (3) that [some of them] had unfairly created and implemented a system of rebates and exclusionary formularies that shifts the cost of high insulin list prices of drugs [to] certain patients in violation of Section 5(a), (n) of the FTC Act, 15 U.S.C. § 45(a), (n).

Doc. [44] at 13 (footnote omitted).

Plaintiffs filed an action in this Court seeking preliminary and permanent injunctive relief along with declaratory relief. Their action puts forward four primary legal theories for why the FTC's in-house proceeding violates the Constitution. First, they assert that the in-house proceeding violates Article III of the Constitution, which vests the "judicial Power of the United States" in federal Article III courts. Second, they argue that the FTC Commissioners are unlawfully insulated from removal in violation of Article II of the Constitution. Their third theory is similar. They say the FTC's

- 2 -

administrative law judge ("ALJ") overseeing the proceeding is likewise unlawfully insulated from removal.  Lastly, Plaintiffs maintain that the FTC's authority to act as prosecutor and judge violates Plaintiffs' Fifth Amendment Due Process rights, including because the Commission, Plaintiffs say, already has decided the outcome of the proceeding.  Citing these constitutional violations, Plaintiffs seek a preliminary injunction staying the FTC proceeding pending resolution of their constitutional challenges.

## II.    Discussion

Injunctions, speaking generally, are equitable remedies "shaped to right an ongoing wrong."  *Kohl by Kohl v. Woodhaven Learning Ctr.*, 865 F.2d 930, 934 (8th Cir. 1989).  They either prohibit a defendant from taking certain actions or require the defendant to take certain actions.  Samuel L. Bray, *The System of Equitable Remedies*, 63 UCLA L. Rev. 530, 553 (2016).  Preliminary injunctions, specifically, "preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  The United States Court of Appeals for the Eighth Circuit has "repeatedly recognized" the preservational purpose of preliminary injunctive relief.  *Lindell v. United States*, 82 F.4th 614, 618 (8th Cir. 2023) (explaining a preliminary injunction should "preserve the status quo; it is not to give the movant the ultimate relief he seeks"), *cert. denied*, 144 S. Ct. 1350 (2024); *see also, e.g.*, *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984) (explaining the "primary function" of a preliminary injunction is to "preserve the status quo until, upon final hearing, a court may grant full, effective relief").  The "status quo" is not "the situation existing at the moment the law suit is filed."  *See O Centro Espirita Beneficiente*

*Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004) (en banc) (McConnell, J., concurring).  It is the "last peaceable uncontested status existing between the parties before the dispute developed."  *Id.* (internal quotations omitted); *accord N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  The party seeking a preliminary injunction "bears the burden of establishing the necessity of the remedy." *Lindell*, 82 F.4th at 618.  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  As the Eighth Circuit puts it, whether a district court should issue a preliminary injunction involves the consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112 (8th Cir. 1981) (en banc); *Walmsley v. Fed. Trade Comm'n*, 117 F.4th 1032, 1037–38 (8th Cir. 2024).

A.    <u>Plaintiffs have not shown a likelihood of success on the merits</u>.

"While no single factor is determinative" in the preliminary injunction analysis, "the probability of success factor is the most significant."  *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (internal quotations and citations omitted). The Court will begin its discussion there.

*i.    Article III*

Plaintiffs' likelihood of the success on the merits of their Article III claim runs into precedent that binds this Court, namely *Arkansas Wholesale Grocers' Association v. Federal Trade Commission*, 18 F.2d 866, 870 (8th Cir. 1927). There, nearly a century ago, the appellant presented the Eighth Circuit with the contention that Section 5 of the Federal Trade Commission Act was "unconstitutional." *Id.* Judge Van Valkenburgh, writing for a unanimous panel, noted that "the Federal Trade Commission Act ha[d] frequently been enforced in the courts," but added that it might have "be[en] true that the constitutionality of the act, instead of being directly decided, ha[d] rather been necessarily assumed." *Id.* "Nevertheless," he wrote, the question could not then "be regarded an open one." *Id.*

"The Federal Trade Commission is an administrative body; it is a fact-finding body. It has been authoritatively held that it is within the power of Congress to delegate to an administrative body . . . the duty and power of finding facts upon which subsequent orders may be made and action predicated." *Id.* The court provided numerous citations to cases of "the same effect." *Id.* at 871 (citing, *e.g.*, *Nat'l Harness Mfrs.' Ass'n v. Fed. Trade Comm'n*, 268 F. 705, 707 (6th Cir. 1920) ("The act delegates to the commission no judicial powers[.]")). Subsequently, other courts of appeals went on to cite *Arkansas Wholesale* to reject the same ultimate contention Plaintiffs make here. *See, e.g.*, *Fed. Trade Comm'n v. A. McLean & Son*, 84 F.2d 910, 912 (7th Cir. 1936) (finding "no merit" in contention that Section 5 of the FTC Act "violates the federal constitutional mandate

of separation of governmental functions" including "art. 3, Sec. 1" (citing, inter alia, *Ark. Wholesale*, 18 F.2d at 866)).

While some opinions of a superior court may not always age well, precedent does not have an expiration date. *See Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 299 (2d Cir. 2009) (explaining that "cases 'may be old, but they are old precedent, and we are bound to follow them'" (quoting *Sea Vessel, Inc. v. Reyes*, 23 F.3d 345, 348–49 (11th Cir. 1994))). A published opinion of the Eighth Circuit "remains the law in this circuit" and future panels of the court "must follow it until the en banc court or the Supreme Court [says] otherwise." *United States v. Flynn*, 969 F.3d 873, 882 (8th Cir. 2020); *accord U.S. ex rel. Rent It Co. v. Aetna Cas. & Sur. Co.*, 988 F.2d 88, 90 (10th Cir. 1993) ("[O]ne panel of this court is bound by the precedents of another, however old[.]"); *see also, e.g.*, *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 923–24 & n.3 (2023) (finding *Highway Construction Co. v. McClelland*, 15 F.2d 187, 187 (8th Cir. 1926) (per curiam), to be binding), *aff'd*, 604 U.S. 22 (2025).

It is axiomatic that a published opinion of the Eighth Circuit likewise binds this Court when it applies to the case at bar. *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003); *see also Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue[.]"). *Arkansas Wholesale* binds this Court. If the case does not apply here, Plaintiffs have failed to show as much. *See* Amy Coney Barrett, *Stare Decisis and Due Process*, 74 U. Colo. L. Rev. 1011, 1017 (2003) (explaining that a litigant may argue whether an earlier published

opinion "applies, but she typically may not debate whether the court correctly decided it").

To be sure, Plaintiffs argue that the Federal Trade Commission's powers have expanded in the decades since its inception and that some of these early precedents are out of step with the Supreme Court's precise reasoning in more recent decisions. *See, e.g.*, *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109 (2024). Both contentions may be true. But the Court sees neither as an avenue to nullify the precedent. The core proceedings that Plaintiffs seek to preliminarily enjoin here are not materially different from those in *Arkansas Wholesale*. Nor does the Court find *Jarkesy* to be sufficiently inconsistent with *Arkansas Wholesale*. *See Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000) (noting published panel opinions not binding "if an intervening expression of the Supreme Court is inconsistent with those previous opinions"); *see also Calzone v. Summers*, 942 F.3d 415, 427 n.8 (8th Cir. 2019) (en banc) (Grasz, J., concurring) (noting district courts are "bound to apply this circuit's precedent" unless there is "a controlling Supreme Court decision to the contrary"); *accord Texas v. United States*, 126 F.4th 392, 415 (5th Cir. 2025) (concluding court was "bound to follow" a previous circuit precedent "absent an intervening change in the law that unequivocally overrules that decision").

At best, *Jarkesy* casts some doubt on *Arkansas Wholesale*'s continued viability. But mere doubt about the continued viability of a published panel opinion of the U.S. Court of Appeals is not enough for a federal district court within that circuit to altogether disregard it. *See Walls v. Sanders*, 733 F. Supp. 3d 721, 746 (E.D. Ark. 2024) (Rudofsky, J.). And further, whether a future panel of the Eighth Circuit would disregard a previous

panel opinion based on subsequent precedent is "a question above my pay grade." *Id.*; *see also In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 155 (2d Cir. 2015) (explaining that if the "impact" of an "intervening Supreme Court decision" is "fundamental," it "requires *this Court* to conclude that a decision of a panel of this Court is no longer good law" (emphasis added) (internal quotations omitted)).  Based on this binding precedent, Plaintiffs are not likely to succeed on this legal theory.

     ii.       *Article II – Commissioner Removal*

Precedent proves to be Plaintiffs' problem on this point too.  In *Humphrey's Executor v. United States*, the Supreme Court found that a statute providing that the President could remove FTC Commissioners only for "inefficiency, neglect of duty, or malfeasance in office" was constitutional.  295 U.S. 602, 619 (1935).  Since then, for better or worse, "removal restrictions have been generally regarded as lawful for so-called 'independent regulatory agencies,' such as the Federal Trade Commission." *Morrison v. Olson*, 487 U.S. 654, 724–25 (1988) (Scalia, J., dissenting).  Undeterred, Plaintiffs dig in on their Article II argument regarding the Commissioners.

*Humphrey's Executor*, they say, "never considered, much less approved, the expanded FTC."  Doc. [45] at 11.  For that reason, "it cannot control." *Id.*  Plaintiffs then troublingly misrepresent a holding of the Eighth Circuit.  Selectively quoting the Court of Appeals, their brief reads: "'When the Supreme Court issues an opinion with reasoning that appears to undercut an earlier decision'—as *Seila Law*[1] undercut *Humphrey's Executor*—lower courts may 'apply the earlier ruling' only 'in factual contexts analogous

---

[1] *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020).

to the earlier case.'" *Id.* at 11–12 (quoting *United States v. Cavanaugh*, 643 F.3d 592, 606 (8th Cir. 2011)).   But *Cavanaugh* says no such thing and, in fact, stands for the opposite.   There, the Eighth Circuit actually said: "We note only that, when the Supreme Court issues an opinion with reasoning that appears to undercut an earlier decision, lower courts must continue to apply the earlier ruling in factual contexts analogous to the earlier case until such time that the Supreme Court itself overturns the earlier case." *Cavanaugh*, 643 F.3d at 606.

Plainly, the Eighth Circuit's language in no way stands for the proposition Plaintiffs represented.   *See id.*   Given the great caliber of attorneys for Plaintiffs, and the sheer number representing them in this action, the Court finds this misrepresentation could not have been inadvertent.   After all, the point *Cavanaugh* truly makes—that lower courts remain bound by Supreme Court precedent even when subsequent Supreme Court decisions cast doubt on previous Supreme Court holdings but do not overrule them—is not an obscure one.   Indeed, the Supreme Court has made the point numerous times.   *See, e.g.*, *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (reaffirming that principle from *Rodriguez*); *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983) (per curiam) ("Needless to say, only this Court may overrule one of its precedents.").

The point Plaintiffs manufactured through their *Cavanaugh* distortion may find support in some scholarship,[2] but it is unrecognizable in practice. Subordinate courts recognize with regularity the Supreme Court's sole prerogative for overruling its own decisions. *See, e.g.*, *United States v. Davidson*, 108 F.4th 706, 712 (8th Cir. 2024); *Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, 117 F.4th 389, 395 (6th Cir. 2024) (en banc); *Protect Our Parks, Inc. v. Chi. Park Dist.*, 971 F.3d 722, 734 (7th Cir. 2020) (Barrett, J., for the Court); *State v. Brist*, 812 N.W.2d 51, 56 (Minn. 2012) (Stras, J., for the Court); *United States v. Morris*, 276 F. App'x 202, 203 (3d Cir. 2008); *In re Grand Jury Subpoena*, 97 F.3d 1090, 1093 (8th Cir. 1996); *Blalock v. United States*, 247 F.2d 615, 621 (4th Cir. 1957); *Comm'r of Internal Revenue v. Lasker's Est.*, 141 F.2d 889, 890 (7th Cir. 1944).

In sum, *Humphrey's Executor* binds this Court, however "old and crumbling" it may be. *See* Bryan A. Garner, *et al.*, *The Law of Judicial Precedent* 29 (2016). Elsewhere, Plaintiffs seem to appreciate that reality; they expressly "reserve[d] all rights to argue the Supreme Court should overrule" the case. *See* Doc. [1] at 22 n.72; *accord* Doc. [24] at 22 n.3. While they have identified some considerable arguments that may convince a majority of the Members of the Supreme Court,[3] this Court must dutifully

---

[2] *See* C. Steven Bradford, *Following Dead Precedent: The Supreme Court's Ill-Advised Rejection of Anticipatory Overruling*, 59 Fordham L. Rev. 39, 90 (1990) ("If the Supreme Court continues to act less than forthrightly in dealing with precedent it dislikes, lower courts must be free to use the doctrine of anticipatory overruling to reach the right result."); Bradley Scott Shannon, *Overruled by Implication*, 33 Seattle Univ. L. Rev. 151, 153 (2009) (concluding that lower courts must consider themselves free to recognize when cases have been overruled by implication).

[3] *See Seila Law*, 591 U.S. at 239 (Thomas, J., joined by Gorsuch, J., concurring in part and dissenting in part) ("In a future case, I would repudiate what is left of [*Humphrey's Executor*]."); *see also* Doc. [56] (citing Letter from Sarah M. Harris, Acting Solicitor General, to Richard J. Durbin, United

apply *Humphrey's Executor* "[r]egardless of what the future may hold," *see United States v. Kempis-Bonola*, 287 F.3d 699, 702 (8th Cir. 2002).  *See also* Evan H. Caminker, *Precedent and Prediction: The Forward-Looking Aspects of Inferior Court Decisionmaking*, 73 Tex. L. Rev. 1, 5 (1994) ("[T]he overwhelming consensus reflected by judicial and academic discourse holds that lower courts ought to define the law merely by interpreting existing precedents, without considering what their higher courts would likely do on appeal.").  Thus, Plaintiffs are no more likely to succeed on this theory.

    iii.       *Article II – ALJ Removal*

Plaintiffs' most compelling ground is their claim that the ALJ overseeing the FTC proceeding is unlawfully insulated from removal in violation of Article II of the Constitution.  That said, the Court's "preliminary assessment" is that they have a low likelihood of success on the merits.  *See Howe v. Varity Corp.*, 36 F.3d 746, 752 (8th Cir. 1994) (acknowledging that "rulings on motions for preliminary injunction are sometimes tentative," including in the assessment of the "likelihood of success on the merits").

The parties agree that the ALJ here is an inferior officer.  *See* Doc. [44] at 23 n.9; *cf. Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 244–52 (2018) (holding ALJs of the Securities and Exchange Commission are officers of the United States who must be appointed in accordance with the Appointments Clause).  Plaintiffs say that the ALJ's

---

States Senator (Feb. 12, 2025) (reporting under 28 U.S.C. § 530D that the Department of Justice "will no longer defend" the constitutionality of the "statutory tenure protections for members of the Federal Trade Commission")).

layered tenure protections[4] run counter to *Free Enterprise Fund v. Public Company Accounting Oversight Board*, where the Supreme Court determined a "second level of tenure protection change[d] the nature of the President's review" and resulted in "a Board that is not accountable to the President, and a President who is not responsible for the Board." 561 U.S. 477, 495–96 (2010); *accord Fleming v. United States Dep't of Agric.*, 987 F.3d 1093, 1104 (D.C. Cir. 2021) (Rao, J., concurring in part and dissenting in part) ("[A] double layer of independence contravenes the separation of powers and undermines the democratic accountability promoted by vesting all executive power in the President.").

The Supreme Court, though, has also concluded that Congress can provide tenure protections to "certain inferior officers with narrowly defined duties." *Seila Law*, 591 U.S. at 204 (emphasis omitted). That includes "inferior officers with limited duties and no policymaking or administrative authority." *Id.* at 218. And the Supreme Court has noted that "many administrative law judges of course perform adjudicative rather than enforcement or policymaking functions . . . or possess purely recommendatory powers." *Free Enter. Fund*, 561 U.S. at 507 n.10. Plaintiffs have not convinced the Court that the FTC's ALJs do not fall within this exception.

---

[4] Plaintiffs argue that there are three layers of for-cause removal protection. *See* Doc. [24] at 24. First, the FTC may remove an ALJ only "for good cause established and determined by the Merit Systems Protection Board." 5 U.S.C. § 7521(a), (b)(1). Second, the FTC Commissioners who may initiate an ALJ's removal are themselves removable by the President only for cause. 15 U.S.C. § 41. Third, the President can remove members of the Merit Systems Protection Board only for cause. 5 U.S.C. § 1202(d).

Plaintiffs point to the Court of Appeals for the Fifth Circuit's decision in *Jarkesy v. Securities & Exchange Commission*, where the court held that removal restrictions on the Securities and Exchange Commission's ALJs were unconstitutional. 34 F.4th 446, 463–64 (5th Cir. 2022). But there are notable differences between the SEC's ALJs and the FTC's. For example, the Fifth Circuit in *Jarkesy* noted that for ALJs within the SEC, "often their decisions are final and binding." *Id.* at 464. That is not so with the FTC's ALJs who make "recommended decision[s]" only. 16 C.F.R. § 3.51. That issue stands out in the other well-reasoned opinions Plaintiffs cite analyzing the ALJs of other entities. *See, e.g.*, *VHS Acquisition Subsidiary No. 7 v. Nat'l Lab. Rels. Bd.*, --- F. Supp. 3d ----, 1:24-cv-02577-TNM, 2024 WL 5056358, at *1 (D.D.C. Dec. 10, 2024) (noting ALJs before the NLRB "in many cases" have "the final word" and that ALJ orders "become final upon omission"), *appeal docketed*, No. 25-5021 (D.C. Cir. Feb. 5, 2025); *Fleming*, 987 F.3d at 1121–22 (Rao, J., concurring in part and dissenting in part) (noting that the Supreme Court has "emphasized" the "important 'last-word capacity,'" where "an ALJ's decision can become final" if an agency "'declines review'" (quoting *Lucia*, 585 U.S. at 249)).[5]

What is more, the United States District Court for the Western District of Missouri recently declined to enter a preliminary injunction against the FTC in an action raising

---

[5] *Compare also, e.g.*, 29 C.F.R. § 102.48(a) ("the findings, conclusions, and recommendations contained in the Administrative Law Judge's decision . . . automatically become the decision and order of the [NLRB]"), *and* 7 C.F.R. § 1.142(c)(4) ("The [ALJ's] decision shall become final and effective without further proceedings . . . unless there is an appeal to the [USDA's] Judicial Officer by a party to the proceeding"), *with* 16 C.F.R. § 3.53 ("If no party files exceptions to the recommended decision of the Administrative Law Judge . . . , the [FTC] will enter an order placing the case on its own docket for review").

this same point.  *See H&R Block Inc. v. Himes*, 4:24-cv-00198-BP, 2024 WL 3742310, at *6 (W.D. Mo. Aug. 1, 2024) (finding plaintiff was unlikely to succeed on the merits of its argument that the FTC's statutory scheme permitting a matter to be initially decided by an ALJ violates Article II).  The plaintiff there appealed the denial of the preliminary injunction[6] and sought a preliminary injunction pending appeal.  In an unsigned order, over no noted dissent, the Eighth Circuit declined to grant a preliminary injunction pending appeal in that case.  *H&R Block, Inc. v. Himes*, No. 24-2626 (8th Cir. Sept. 13, 2024); *see also Nebraska v. Biden*, 52 F.4th 1044, 1046 (8th Cir. 2022) (per curiam) (explaining that in "ruling on a request for an injunction pending appeal," the court "engage[s] in the same inquiry as when it reviews the grant or denial of a preliminary injunction").  The Court preliminarily assesses that Plaintiffs have a low likelihood of success on the merits under this legal theory.[7]

iv.    *Due Process*

Plaintiffs' final claim is that the FTC's in-house proceeding violates the Fifth Amendment's Due Process Clause because the FTC acts as a prosecutor, judge, and jury

---

[6] The Eighth Circuit since has dismissed the appeal on the plaintiff-appellant's motion.  *H&R Block*, No. 24-2626, 2025 WL 415363 (8th Cir. Jan. 16, 2025).

[7] Three days ago, Defendants filed a Notice with the Court informing it that although they continue to urge the Court to deny Plaintiffs' Motion for Preliminary Injunction, the Department of Justice would "not continue to defend" the "removal restrictions for administrative law judges in 5 U.S.C. § 7521."  Doc. [57].  "But there is, of course, no exclusive commitment to the Executive of the power to determine the constitutionality of a statute."  *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 197 (2012).  The Court is "duty bound to apply the correct law; parties cannot waive the application of the correct law or stipulate to an incorrect legal test."  *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 816 (11th Cir. 2022) (en banc).  It could go without saying, but if the Department of Justice concludes that the FTC is engaging in unconstitutional conduct, the Department may counsel the Commissioners—who "take an oath to uphold the Constitution"—accordingly.  *See Gamble v. United States*, 587 U.S. 678, 719 n.5 (2019) (Thomas, J., concurring) (noting that officials in the Executive branch "must independently evaluate the constitutionality of their actions").

in its own administrative proceedings. They further argue that, here, certain Commissioners have prejudged the outcome as shown by previous remarks they have made about PBMs. The Court concludes that precedent forecloses Plaintiffs' structural arguments. *See Chamber of Com. of Minneapolis v. Fed. Trade Comm'n of the U.S.*, 280 F. 45, 48 (8th Cir. 1922) (concluding "there is no denial of due process" in FTC's regime); *Ark. Wholesale*, 18 F.2d at 871 (concluding right of review of the findings of the FTC and whether any order it makes "is responsive to and justified by such findings, satisfies the requirement of due process"); *see also Withrow v. Larkin*, 421 U.S. 35, 58 (1975) (concluding that "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation").

Plaintiffs' case-specific arguments, that the Commissioners have prejudged the outcome here, likely will fail on the merits if for no other reason than the high standard Plaintiffs will need to meet. *See id.* (referring to a showing where "the special facts and circumstances present in the case" show "that the risk of unfairness is intolerably high"). In *Federal Trade Commission v. Cement Institute*, for example, the Supreme Court held that even though Commissioners had publicly stated views contrary to the plaintiff's position, "the fact that the Commission had entertained such views as the result of its prior ex parte investigations did not necessarily mean that the minds of its members were irrevocably closed on the subject." 333 U.S. 683, 701 (1948).

Additionally, there is a real question whether this Court has jurisdiction to decide Plaintiffs' bias claim. Congress's creation of the review scheme for the FTC's actions "divests district courts of their ordinary jurisdiction over the covered cases." *Axon*

*Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185 (2023).  An exception to that rule applies for Plaintiffs' structural constitutional claims.  *Id.* at 185–86.  This bias argument, however, is based on specific statements from certain Commissioners related to these Plaintiffs.  Thus, it is not based on the FTC's power generally but rather on something "particular about how that power was wielded."  *Id.* at 193.  For these reasons, Plaintiffs' last legal theory does not seem likely to be successful on the merits.

B.    Plaintiffs have not shown irreparable harm warranting preliminary relief.

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages."  *Rogers Grp., Inc. v. City of Fayetteville*, 629 F.3d 784, 789 (8th Cir. 2010) (internal quotation omitted); *accord Irreparable Injury*, *Black's Law Dictionary* (12th ed. 2024) ("An injury that cannot be adequately measured or compensated by money[.]").  Merely lacking an adequate remedy at law, though, is not sufficient to demonstrate a threat of irreparable harm that warrants preliminary injunctive relief.  A movant "must show harm that is certain and great and of such imminence that there is a clear and present need for equitable relief."  *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1346 (8th Cir. 2024); *United States v. Iowa*, 126 F.4th 1334, 1352 (8th Cir. 2025).  Here, assuming Plaintiffs have suffered harm—notwithstanding the binding precedent that establishes the constitutionally of the FTC's actions—Plaintiffs may be correct that their injury cannot be fully compensated through an award of damages.  Even so, they have not demonstrated that their harm is great.

- 16 -

To show that their harm is irreparable, Plaintiffs rely largely on recent language from the Supreme Court discussing the very type of injury Plaintiffs allege here. In *Axon Enterprise, Inc. v. Federal Trade Commission*, the Supreme Court noted that a claim of being subjected to unconstitutional agency authority "is impossible to remedy once the proceeding is over." 598 U.S. at 191. The Court agrees with Plaintiffs that this language from *Axon* cannot be "cabin[ed]" to the jurisdictional matters that case was discussing. Doc. [45] at 20. The Supreme Court's description of the harm as "impossible to remedy" does not meaningfully differ from the standard of what makes harm irreparable—having no adequate remedy at law. *See Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1348–49 (D.C. Cir. 2024) (Walker, J., concurring in the judgment in part and dissenting in part). While courts should be careful not to read judicial opinions like statutes, *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979), it is hard to fault those that take the Supreme Court at its word. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 43 n.10 (2025) (remarking that lower courts that relied on a previous decision's dicta "simply took us at our word, in a way both understandable and appropriate").

But establishing that the harm is irreparable is not enough for a preliminary injunction. Since *Axon* "did not speak to what constitutes irreparable harm for purposes of the extraordinary remedy of a preliminary injunction," *Alpine Securities Corp.*, 121 F.4th at 1336 (principal opinion); *accord Leachco, Inc. v. Consumer Product Safety Commission*, 103 F.4th 748, 765 (10th Cir. 2024), *cert. denied*, No. 24-156, 2025 WL 76435 (U.S. Jan. 13, 2025), *Axon*'s language describing the injury may get Plaintiffs to irreparable harm, but it does not get them to *great* irreparable harm. *See Heideman v. S.*

- 17 -

*Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (finding that "while the harm to the Plaintiffs may arguably be imminent and irreparable, it is not 'great' or 'substantial'").

Plaintiffs also cite *Morehouse Enterprises, LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, where the Eighth Circuit stated, albeit in dicta, that "[i]n most instances, constitutional violations constitute irreparable harm." 78 F.4th 1011, 1017 (8th Cir. 2023).[8] But the very next sentence goes on to say that "the assertion of a possible constitutional violation does not release plaintiffs from their burden of showing that irreparable harm is more than just a 'mere possibility.'" *Id.*; *accord Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021) ("[T]he movant must show more than the mere possibility that irreparable harm will occur."). It stands to reason that the assertion of a possible constitutional violation likewise does not release Plaintiffs from their burden of showing that the irreparable harm is great. *Cigna*, 103 F.4th at 1346 (movant must show harm that is certain *and* great).

C.    The balance of the equities and the public interest favors Defendants.

The remaining two *Dataphase* factors—the balance-of-harms and public-interest factors—merge when the government is, like here, the nonmoving party. *Eggers v.*

---

[8]  *Morehouse* cited to *Powell v. Ryan*, 855 F.3d 899, 904 (8th Cir. 2017), for this proposition. But *Powell* says only that "[t]he loss of First Amendment freedoms constitutes irreparable injury," citing to *Johnson v. Minneapolis Park & Recreation Board*, 729 F.3d 1094, 1101–02 (8th Cir. 2013), which in turn cited to Justice Brennan's plurality opinion in *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). As others have noted, that statement from the three-Justice plurality in *Elrod* does not apply even to the Establishment Clause of the First Amendment—let alone the entire Constitution. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 300 (D.C. Cir. 2006); *see also Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 203 (3d Cir. 2024) (explaining that the Court of Appeals for the Third Circuit does not presume constitutional harms are irreparable except in some First Amendment contexts).

*Evnen*, 48 F.4th 561, 564–65 (8th Cir. 2022). "[W]hen balancing the equities, 'the key question is whether the movant's likely harm without a preliminary injunction exceeds the nonmovant's likely harm with a preliminary injunction in place.'" *Missouri v. Biden*, 112 F.4th 531, 538 (8th Cir. 2024) (quoting *Cigna*, 103 F.4th at 1347).

Given the precedent on the merits discussed at length above, it follows that there likely will be no harm to Plaintiffs at all. That is, their harm is contingent on the validity of their legal theories. If the FTC's in-house proceedings before the ALJ do not violate the Constitution, there is no harm to Plaintiffs, reparable or otherwise. Without a showing that they will likely prevail on their claims, Plaintiffs' "asserted threat of irreparable harm is correspondingly weakened." *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 738 n.11 (8th Cir. 2008) (en banc); *accord Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015) ("But as we have concluded [the plaintiff] is unlikely to succeed [on the merits], . . . [the plaintiff] has not shown a threat of irreparable harm that warrants preliminary injunctive relief.").

But even assuming Plaintiffs are suffering the harm they allege, that harm is the bare violation of the Constitution itself. The Court in no way means to trivialize a constitutional violation. *Cf. Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988) ("A violation of constitutional rights is never *de minimis*, a phrase meaning so small or trifling that the law takes no account of it."). Indeed, every violation of a right imparts damage. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 287 (2021). But not every violation of a constitutional right warrants a preliminary injunction. "Rather, tradition and precedent have long reserved them for extraordinary situations." *Del. State Sportsmen's*

*Ass'n*, 108 F.4th at 198.  Because the only here-and-now injury to which Plaintiffs point is the violation of the Constitution itself, they have not shown that they are likely to be injured more than nominally.[9]  *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986) (rejecting the argument that courts could presume, without proof, damages greater than nominal); Anthony DiSarro, *A Farewell to Harms: Against Presuming Irreparable Injury in Constitutional Litigation*, 35 Harv. J.L. & Pub. Pol'y 743, 795 (2012) (arguing courts should "restore the focus on harm" and find actual harm before issuing preliminary injunctions).

Now compare that *possible* nominal injury with what Defendants would face if enjoined.  Congress, the people's elected representatives, established the Federal Trade Commission by statute more than a century ago.  Federal Trade Commission Act, Pub. L. No. 63-203, 38 Stat. 717 (1914).  To this day, its Commissioners remain tasked with preventing certain persons and entities from using unfair methods of competition or deceptive acts or practices.  15 U.S.C. § 45.  The President of the United States appoints the Commissioners, who must be bipartisan, with the advice and consent of the Senate. *Id.* § 41.  The Commissioners here are acting on their congressional mandate.  A preliminary injunction would stop them from carrying out their duties.  "[A]ny time" that the federal government is "enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *See Maryland v.*

---

[9] Litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury. *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980); *see also I.A.M. Nat. Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 25 (D.C. Cir. 1986) ("Formidable as it is, the cost and delay associated with modern-day litigation simply does not establish irreparable harm.").

*King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).

In the same way, the requested injunction would be against the public's interest. The Supreme Court "has held that '[t]here is always a public interest in prompt execution' of the law, absent a showing of its unconstitutionality." *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring in the grant of stay) (quoting *Nken v. Holder*, 556 U.S. 418 (2009)). Here, the Commission found it proper to bring in-house proceedings against Plaintiffs for what the Commission alleges are Plaintiffs' unfair methods of competition—something Congress directed them to do. *See* 15 U.S.C. § 45(a)(2) ("The Commission is hereby empowered and directed to . . . ."). Precedent binding on this Court establishes that the Commission could do so. Thus, Plaintiffs' request is one to stop the execution of federal law absent a showing of its unconstitutionality. The public consequences of such an injunction are self-evident, especially considering that Plaintiffs, according to the FTC, administer approximately eighty percent of all prescriptions in the United States. Doc. [1] ¶ 34. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). This Court has done so.

## III.    Conclusion

After considering the *Dataphase* factors, the Court does not find issuing a preliminary injunction is appropriate. The Court will not take the "exceedingly unusual"

step of preliminarily enjoining Defendants from acting under their congressionally mandated authority that has "long been on the books." *O Centro*, 389 F.3d at 1018 (McConnell, J., concurring). The Court will not "halt" the Commission's "inquiry at the threshold." *See Chamber of Com. of Minneapolis*, 280 F. at 47 (declining to issue writ to stop FTC in-house proceeding). This denial of preliminary relief does not mean that Plaintiffs will be unable to obtain any relief when all is said and done. *See Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 229 (4th Cir. 2024) ("The denial of preliminary relief is just that: preliminary."); *cf. Biden v. Missouri*, 595 U.S. 87, 106 (2022) (Alito, J., dissenting) (noting that the grant of a stay of a preliminary injunction "means only that the [movant] is likely to be able to show that [its action] is lawful, not that it actually is so").

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Injunction, Doc. [7], is **DENIED**.

Dated this 18th day of February 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE